29 C.C.P.A. (Patents)

## PETERSON v. SCHATZEL.

### Patent Appeals No. 4611.

Court of Customs and Patent Appeals,
June 15, 1942.

Jos. N. Nielsen, of New York City, for appellant.

George J. Schottler, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences awarding priority of the invention defined in the single count in issue to appellant, Thomas F. Peterson.

The invention relates to insulated electric conductors, and is sufficiently described in the count in issue which reads: "An article of manufacture comprising, in combination, an electric conductor, an insulating wall enclosing the conductor, a surrounding conducting layer comprising a thin layer of non-metallic conducting ma-

terial and a layer of wires, said wires serving as a second conductor, and an overlying sheath."

The interference is between appellant's application No. 373,181, filed June 24, 1929, and appellee's patent No. 2,059,178, issued October 27, 1936, on an application filed June 7, 1934.

The count originated in appellee's patent, and was copied by appellant for interference purposes.

Appellee is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

It will be observed that the count calls for an article of manufacture comprising four elements, to wit: (a) "an electric conductor," (b) "an insulating wall enclosing the conductor," (c) "a surrounding conducting layer comprising a thin layer of non-metallic conducting material and a layer of wires," the "wires serving as a second conductor," and (d) "an overlying sheath."

During the motion period, appellee Schatzel moved to dissolve the interference on the ground that appellant could not make the claim constituting the count in issue. The motion was denied by the Primary Examiner.

As no evidence was introduced by appellee Schatzel, judgment on the record was entered against him by the Examiner of Interferences, and priority of invention awarded to appellant Peterson.

On appeal, the Board of Appeals held that appellant Peterson could not make the claim constituting the count in issue, reversed the decision of the Examiner of Interferences, and awarded priority of invention to appellee Schatzel.

The sole issue in the case is whether appellant Peterson is entitled to make the claim constituting the count in issue.

It was contended in appellee's motion to dissolve that appellant Peterson did not disclose in his application "a layer of wires, said wires serving as a second conductor, and an overlying sheath."

In his decision, the Primary Examiner, after stating that appellee Schatzel's insulated electric conductor was designed for the purpose of preventing unauthorized diversion of electric current ahead of the electric meter, whereas appellant Peterson disclosed a shielded electric cable intended

for high voltages, said that the language in the count, "a layer of wires, said wires serving as a second conductor," does not "require more than that the wires be capable of conveying the electric currents as impinged thereon. Hence, whether the wires carry line current or mere charging currents is immaterial for this claim. * * * Furthermore, as far as the claim is concerned the wires may constitute a conductor of electricity from a separate source such as a telephone line." The examiner further held that the language of the count was not ambiguous and that, therefore, there was no occasion for resorting to appellee Schatzel's patent to ascertain the meaning therein ascribed to it. He then held that appellant Peterson's application disclosed a layer of wires in the form of wire braid which served the purpose of "electric shielding," and that, therefore, the wires must be of conducting material within the meaning of the count in issue. In holding that appellant Peterson disclosed the last element of the count, that is, "an overlying sheath," the examiner referred to a decision by the Examiner of Interferences in a prior interference, wherein it was held that appellant Peterson disclosed in his application an overlying "lead covering" or "sheath."

It may be said at this point that at the time appellant copied the claim constituting the count in issue from appellee's patent, the same Primary Examiner held that the invention defined in the involved count was unpatentable to appellant—

" * * * for the reason that it is misdescriptive of his invention. The claim includes the important limitation 'a layer of wires, said wires *serving as a second conductor.*' (Italics quoted.)

"In the Schatzel patent is disclosed a conducting layer 15 in the form of a helical serving of tinned copper wires. The total cross section of these wires is equal to that of a conductor 11 for the *express purpose of carrying power current.* (Italics not quoted.) Hence the wires have a distinct and important function. The semiconducting layer next to these wires also plays an important role not contemplated by applicant.

"The disclosures in the instant application [referring to Peterson's application] relate to *shielded high tension cable* for ignition purposes. The wires in this case serve merely the purpose of shielding the inner conductor. No disclosures refer to the wires as a conductor of electric current such as flow in the inner conductor. (Italics quoted.)

"The shielding function of the wires grounds any charges thereon that would affect the electric currents in the inner wire.

"Obviously, the spirit of the invention is different in both cases. In the [Schatzel] patent the wires and semi-conductor underlayer prevents theft of electric current by means of pin taps. In this [Peterson's] application the two layers act purely as shields."

Thereafter, apparently in view of appellant Peterson's response to his decision, the Primary Examiner held that appellant could make the claim constituting the count in issue, and declared the involved interference.

In its decision holding that appellant Peterson could not make the claim constituting the count in issue and awarding priority of invention to appellee Schatzel, the Board of Appeals said: "We have examined Peterson's original specification and drawings with great care without finding definite disclosure of this exact combination as a whole, particularly the combination of wires forming a second conductor and a sheath as combined with the remainder of the features. Peterson has attempted to point out wherein this specific combination may be found, but we do not agree that there is definite disclosure of combination of wires forming a second conductor and a sheath as construed in the light of the disclosure in Schatzel's patent in connection with any ambiguity of these terms while still giving the terms the broadest scope they will fairly support."

In response to appellant Peterson's petition for rehearing, the board said: "In answer to the question in the petition as to what is meant by reference to 'any ambiguity', it may be said that this relates to the various contentions as to meaning of 'layer of wires, said wires serving as a second conductor and an over-lying sheath'."

We are not entirely clear as to just what the board meant by its reference to ambiguity in either of its decisions, unless it had in mind, and, therefore, intended to say, that the language in the count, "a layer of wires, said wires serving as a second conductor," was ambiguous, and

that the meaning to be given such language should be that disclosed in appellee's patent where the count originated. We may be in error, however, in assuming that that is what the board had in mind, because it said nothing in its decision as to the meaning given such language in appellee's patent.

Although in his decision denying appellee's motion to dissolve the interference, the Primary Examiner stated that the count was unambiguous, it would seem to be apparent from his two decisions that the language "a layer of wires, said wires serving as a second conductor," contained in the count, is not entirely free from ambiguity. Certainly, if, as stated by the Primary Examiner in his decision holding that the invention defined in the count was unpatentable to appellant, the layer of wires referred to in the count serves as a conductor of power current such as flows through the conductor first referred to in the count, then something more would seem to be required of such wires than the mere capability of conveying electric current and serving the purpose of "electric shielding," as stated by the Primary Examiner in his decision denying appellee's motion to dissolve.

▮ It is apparent from what has been said that the language in the count, "a layer of wires, said wires serving as a second conductor," is open to two interpretations and is, therefore, ambiguous. Accordingly, we turn to appellee's patent where the count originated to determine the meaning to be given such language. See Ernest M. Brogden v. Henry B. Slater, 40 F.2d 988, 17 C.C.P.A.(Patents) 1240; In re Alexander M. Nicolson, 49 F.2d 961, 18 C.C.P.A.(Patents) 1468; Kenyon v. Crane, 120 F.2d 380, 28 C.C.P.A.(Patents) 1208, 1214.

Appellee stated in his patent that it was desirable that the "total cross section of the wires," referred to in the count, be "approximately equal to the cross section of one of the conductors * * *, so that the wires * * * *may serve as one of the conductors in a three conductor cable.*" (Italics ours.) Appellee further stated in his patent that "In the construction thus far described, any slender, pointed conducting members forced into the cable and into" direct contact with the wires which serve as a second conductor "the resulting short circuit probably would fuse the inserted member instantly, with damage to

the cable sheath which would be readily apparent," thus indicating that an attempt had been made to misdirect the current ahead of the meter.

It will be observed that in order for the layer of wires, referred to in the count, to serve as a second conductor, for the purposes mentioned in appellee's patent, it is necessary that the "total cross section of the wires be approximately equal to the cross section" of the conductor first referred to in the count.

Counsel for appellee states in his brief, and we have no doubt of the correctness of such statement, that by the language "a layer of wires, said wires serving as a second conductor," contained in the count, is meant that such wires serve as a "load-carrying circuit" conductor.

Appellant's application relates to "shielded electric cables intended for high voltages." It is stated therein that the term— "'shielded' is used in the art in two senses. One sense frequently intended is a confinement of action (electrostatic, magnetic or electromagnetic) of the conductor, as for example the shielding of aeroplane ignition cables to prevent radio interference or protection of it from influence of the systems external thereto. The other usage refers to a protection of the cable itself from the action of deleterious agents or disturbances. It is in the latter sense that the term is primarily used in high voltage cable engineering, though the problems that arise are the same irrespective of the purpose for which the shielding is designed.

\* \* \* \* \* \*

"Any cable having a conducting outer covering or sheath which may be grounded to carry off charging currents without the development of excessive potential may be said to be shielded. With low voltages shielding is of little moment."

It will be observed that appellant was concerned with a high voltage cable where electric shielding is of vital importance, whereas appellee was concerned with a low voltage cable in which, as stated in appellant's application, "shielding is of little moment."

▮ It is clear from appellant's application that his invention relates to the shielding of high tension cables, and that the wires in his disclosure, which counsel for appellant here contends serve as a second conductor within the meaning of the

count in issue, were designed for and serve the purpose of electric shielding. Accordingly, as stated by the Primary Examiner in his decision denying appellee's motion to dissolve, such wires are capable of conveying electric currents impinged thereon. There is nothing in appellant's application to indicate that his wires serve any purpose other than that of electric shielding, or that they are inherently capable of performing the function of serving as a second conductor within the meaning of the count as interpreted in the light of appellee's patent. We are of opinion, therefore, that appellant is not entitled to make the claim constituting the count in issue.

Subsequent to the filing of the record in this court, appellee filed a motion suggesting a diminution of the record by adding thereto appellee's application as originally filed, two Patent Office actions, and an amendment to such application, together with certain Patent Office actions and amendments in appellant Peterson's application. The motion was granted, subject, however, to the order of the court that the costs of printing the additional matter suggested by appellee should be taxed on final decision.

Counsel for appellant concedes in his brief that appellee's application as originally filed in the Patent Office, the amendment thereto, and the two Patent Office actions, comprising approximately 14 pages of the record, should have been included in the record as originally filed in this court. It is contended by counsel for appellant, however, that the Patent Office actions on appellant's application, the amendments to such application, and the remarks accompanying the amendments, comprising pages 118 to 152, inclusive, of the record, were unnecessary to a proper decision in the case.

Although we have not referred in our decision to the Patent Office actions, the amendments to appellant's application, and the remarks accompanying such amendments, we have found that the matter referred to has aided the court in its determination of the issues presented. Accordingly, the costs of printing the additional material requested by appellee will be taxed against appellant.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.